UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Matthew Locke,

Case No. 23-cv-0571 (WMW/LIB)

Plaintiff,

**ORDER**

v.

County of Hubbard; Cory Aukes, *in his official and individual capacity*; and Scott Parks, *in his official and individual capacity*,

Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss. (Dkt. 11.)  For the reasons addressed below, the motion is granted.

## BACKGROUND

Defendants Cory Aukes and Scott Parks are deputies for the Hubbard County Sheriff's Office.  In August 2021, the deputies responded to a report that numerous protestors were trespassing on an Enbridge pipeline easement in Hubbard County, Minnesota. When the deputies arrived, they observed Plaintiff Matthew Locke and three other individuals who had attached themselves to two pieces of construction equipment using three sleeping dragon devices.[1]  To remove Locke from the construction equipment,

---

[1] A sleeping dragon device is an improvised tool made by protestors to secure themselves to each other or to equipment, with their arms fed through a pipe or a tube. By locking their hands together inside the device, the protestors hinder the ability of law enforcement officers to remove them.

the deputies attempted to use pain compliance techniques to get Locke to release himself from the equipment. Locke alleges that, as the deputies subjected him to the pain compliance techniques, the right side of his face no longer moved in a normal manner. When the deputies failed to remove Locke from the devices, Hubbard County and Cass County extraction teams arrived and removed Locke and the other individuals from the devices. Locke was transported to the hospital and subsequently to Hubbard County Jail.

Locke initiated this lawsuit against Defendant County of Hubbard and the two deputies in their official and individual capacity. Locke alleges that the pain compliance techniques used on him caused him to suffer facial paralysis, emotional distress and tinnitus. In Count 1, Locke brings a claim of excessive force in violation of 42 U.S.C § 1983 and the Fourth and Fourteenth Amendments against Aukes and Parks. In Count 2 and Count 3, Locke brings claims of assault and battery against Aukes, Parks and the County of Hubbard. Defendants move to dismiss this action, arguing that they are entitled to qualified immunity and official immunity.

## ANALYSIS

A complaint must be dismissed if it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). The factual

allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). To satisfy this pleading requirement, a plaintiff must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. The district court may disregard legal conclusions that are couched as factual allegations. *See Iqbal*, 556 U.S. at 678–79.

## I.      Deputies Aukes and Parks in Their Individual Capacity

Defendants argue that Aukes and Parks are entitled to qualified immunity on Locke's Section 1983 excessive force claim because Locke has not identified a clearly established right that was violated when Aukes and Parks responded to the protest. Locke disagrees.

To succeed on a motion to dismiss a 42 U.S.C § 1983 claim on the basis of qualified immunity, Defendants must show that they are "entitled to qualified immunity on the face of the complaint." *Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018) (internal quotation marks omitted). In other words, Defendants are entitled to qualified immunity unless the facts, when viewed in the light most favorable to Locke, demonstrate that Locke was deprived of a constitutional or statutory right that was clearly established at the time of the deprivation. *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (citation omitted). In conducting its legal analysis, the district court may address the elements of the qualified immunity inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This Court considers whether a right was clearly established at the time of the deprivation.

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted). A "clearly established" right does not require the existence of a case involving fundamentally similar facts. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Rather, the court must determine whether the state actor had fair warning that their conduct violated a constitutional right. *Id.* This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks omitted). The Supreme Court of the United States has cautioned against defining a "clearly established right" with an excessive degree of generality. *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). Instead, "clearly established law must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted).

To prove that the law was clearly established when Aukes and Parks allegedly violated Locke's Fourth Amendment and Fourteenth Amendment rights, Locke must identify Eighth Circuit precedent "that involves sufficiently similar facts to squarely govern the individual defendants' conduct in the specific circumstances at issue" or, if such precedent does not exist, "present a robust consensus of persuasive authority constituting settled law." *Bus. Leaders in Christ v. Univ. of Iowa*, 991 F.3d 969, 980 (8th Cir. 2021); *see also Berry v. Hennepin Cnty.*, 20-cv-2189 (WMW/JFD), 2022 WL 3579747, at *4 (D. Minn. Aug. 19, 2022).

Locke does not identify any binding authority on this issue. Instead, Locke points to *Headwaters Forest Defense v. County of Humboldt*, in which nonviolent protestors locked themselves into a black bear device.[2] 276 F.3d 1125, 1128 (9th Cir. 2002). While the protestors were locked to the black bear devices, the officers sprayed the protestors. *Id.* And in effort to force the protestors to release themselves from the devices, the officers denied the protestors water to cleanse their eyes. *Id.* After the protestors refused to comply, the officers forced the protestors' heads back and applied pepper spray with a Q-tip to the corners of the protestors' closed eyes. *Id.* The United States Court of Appeals for the Ninth Circuit concluded that the defendants in *Headwaters Forest Defense* were "not entitled to qualified immunity because the use of pepper spray on the protestors' eyes and faces was plainly in excess of the force necessary under the circumstances, and no reasonable officer could have concluded otherwise." *Id.* at 1131.

The officers' use of force in *Headwaters Forest Defense*, however, is distinguishable from the pain compliance techniques used in this case. "[Q]ualified immunity operates 'to ensure that before they are subject to suit, officers are on notice their conduct is unlawful.'" *Hope*, 536 U.S. at 739 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Locke has not provided any case law, nor has the Court's research revealed any law, that forbids the use of pain compliance techniques. As such, Aukes and Parks were not on notice that their conduct was or would be clearly unlawful.

---

[2] A black bear device is similar a sleeping dragon device. A black bear device is a cylinder with a rod or post welded into the center. Protestors place their arms into the steel cylinders of the black bear device and attach steel bracelets worn around their wrists to the center rods of the device.

There is no requirement that the action in question be previously held unlawful. *Vaugn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001). Locke, however, fails to allege facts to show that the conduct at issue in this case would have been "clear to a reasonable officer that [the officer's] conduct was unlawful in the situation [that the officer] confronted." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1212 (8th Cir. 2013); *see also Forrester v. City of San Diego*, 25 F.3d 804, 809 (9th Cir. 1994) (affirming jury determination that the officer's use of pain compliance techniques to remove nonviolent protestors in front of an abortion clinic was reasonable). To the extent that Locke argues that the deputies' force was excessive force because of the resulting injury, this argument is unavailing. A court analyzes whether *the force applied* was reasonable from the perspective of a reasonable officer on the scene at the time the force was used, the analysis is not based solely on the resulting injury. *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (rejecting an "excessive force" requirement that would be unconstitutional when applied to a citizen with a latent weakness and constitutional when applied to a hardier person; "[t]he governing rule should not turn on such unpredictable and fortuitous consequences of an officer's use of force.").

For these reasons, Aukes and Parks, in their individual capacities, are entitled to qualified immunity. Defendants' motion to dismiss Locke's claim against Aukes and Parks in their individual capacities is granted.

## II.   Deputies Aukes and Parks in Their Official Capacity

The Court next turns to the claim against Aukes and Parks in their official capacities. Locke's Section 1983 claim against Defendants Aukes and Parks in their official capacity

is "another way of pleadings an action against an entity of which an officer is an agent." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)).  Accordingly, Locke's claim against Aukes and Parks in their official capacities is a claim against the County of Hubbard.

"Municipal liability exists 'only where the municipality *itself* causes the constitutional violation.'"  *Perkins v. Hastings*, 915 F.3d 512, 520-21 (8th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  The County of Hubbard "may be liable under § 1983 for constitutional violations if a 'violation resulted from (1) an official municipal policy, (2) an unoffical custom, or (3) a deliberately indifferent failure to train or supervise.'"  *Leftwich ex rel. Leftwich v. Cty. of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

Locke does not allege an official municipal policy, an unoffical custom, or a deliberately indifferent failure to train or supervise that violated his constitutional rights. Therefore, Locke fails to establish a Section 1983 claim against Aukes and Parks in their official capacities and fails to establish a claim against the County of Hubbard. Accordingly, Defendants' motion to dismiss Locke's claim against Aukes and Parks in their official capacities is granted.

## III.   Assault and Battery Claim

Locke also asserts claims of assault and battery under Minnesota law against Defendants.  Defendants contend that they are entitled to official immunity on these claims. Locke contends that he has properly alleged claims of assault and battery.

Under Minnesota's official immunity doctrine, "a public official charged by law with duties which call for the exercise of his [or her] judgment or discretion is not personally liable to an individual for damages unless [the official] is guilty of a willful or malicious wrong." *Birkeland as Tr. for Birkeland v. Jorgensen*, 971 F.3d 787, 792 (8th Cir. 2020) (quoting *Elwood v. Cty of Rice*, 423 N.W.2d 671, 677 (Minn. 1988)).   An officer's decision to use force "is a discretionary decision for which official immunity applies absent a showing of a willful or malicious wrong." *See id.* (evaluating use of deadly force) (citing *Maras v. City of Brainerd*, 502 N.W.2d 69, 77 (Minn. Ct. App. 1993)). Malice under Minnesota law is defined as an intentional act that a public official "had reason to believe is prohibited." *Id.* (quoting *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994).

As addressed in Section I, Parks and Aukes would not have had reason to believe that the use of pain compliance techniques was prohibited.  And Locke does not allege that Parks and Aukes would have had reason to know that the use of pain compliance techniques was prohibited.  Parks and Aukes, therefore, did not act with malice and are also entitled to official immunity.

Finally, because the deputies' discretionary decisions are entitled to official immunity, the County of Hubbard is not vicariously liable.  *Hayek v. City of St. Paul*, 488 F.3d 1049, 1056, 1057 (8th Cir. 2007) (observing that official immunity protects the government entities from vicarious liability arising from the state actor's conduct).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that this matter is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: January 22, 2024                     s/ Wilhelmina M. Wright
                                            Wilhelmina M. Wright
                                            United States District Judge